# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

KENNETH GENTRY,

            Petitioner,      :      Case No. 1:18-cv-318

  - vs -                         District Judge Michael R. Barrett
                                    Magistrate Judge Michael R. Merz

Warden,
  Correctional Reception Center,

                                      :
            Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Kenneth Gentry to obtain relief from his convictions in the Hamilton County Court of Common Pleas for involuntary manslaughter and drug trafficking. Upon review of the Petition (ECF No. 1), Magistrate Judge Stephanie Bowman ordered the State to answer and file the state court record (ECF No. 2). Respondent has done so (State Court Record, ECF No. 7; Return of Writ, ECF No. 8). Petitioner has filed a Supplemental Memorandum in Support of the Petition (ECF No. 4) and a Reply (ECF No. 10). Respondent has filed a Reply (ECF No. 11) to Gentry's Reply, making the case ripe for decision.

The Magistrate Judge reference in the case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 12).

**Litigation History**

On June 15, 2015, a Hamilton County grand jury indicted Petitioner on one count of involuntary manslaughter, one count of corrupting another with drugs, two counts of trafficking in heroin, and two counts of possession of heroin in case number B1502592 (State Court Record, ECF No. 7, Ex. 1). Ten days later a second grand jury indicted him on two counts of trafficking in heroin, one count of aggravated trafficking in drugs, and one count of possession of heroin in case number B1503265-A. In the first case Gentry pleaded guilty to one count of involuntary manslaughter and one count of trafficking in heroin pursuant to a plea agreement; in the second case he pleaded guilty to another count of trafficking in heroin. He was sentenced in both cases to an aggregate term of ten years imprisonment.

Represented by counsel, Gentry appealed to the Ohio First District Court of Appeals which affirmed the convictions and sentence. *State v. Gentry*, Nos. C-160184 and C-160222 (unreported; copy at State Court Record, ECF No. 8, Ex. 18), appellate jurisdiction declined, 150 Ohio St. 3d 1432. Gentry filed an Application to Reopen his appeal under Ohio R. App. P. 26(B), but did not appeal to the Supreme Court of Ohio from its denial. On October 28, 2016, Gentry also filed a petition for post-conviction relief which was never ruled on by the Common Pleas Court and thus may be presumed to have been denied.

Gentry filed his Petition for Writ of Habeas Corpus in this Court on May 8, 2018, pleading the following grounds for relief:

> **Ground One**:
>
> **Supporting Facts:** There was other opioids in the victims system which stated on the toxicology reports contributed to death along with the health issues which victim was already very ill. Since sadly I was the first charged with involuntary manslaughter in Hamilton

county this was handle[d] wrong, poorly & they wanted to presence [sic] to the community with the rise of drugs epidemic courts knew they charged me wrong and that's why I was told with 2 separate indictments I would get 14 years for the drugs so just plea to involuntary manslaughter which under duress they threatened the wellbeing of my baby's mom to release her from jailed for my plea. I more so should've been charged with lesser crimes. Being after the fact newspaper magazine wrote and stated how I got 4 to 5 years more than anyone else sentenced in Hamilton County after me.

**Ground Two**: [No second Ground for Relief is pleaded.]

**Ground Three:**

**Supporting Facts:** Well due to the fact police officers of Renu coerced me into talking to them without reading or advising me of my rights. Which they use that evidence to indictment. Furthermore they overcharged me on the drugs found, also due to circumstances of victims prior drugs uses & collapses with history of injection into picc-line, toxicology reports also indicated higher levels of morphine and oxycodone which contributed to cause of death. Also coroners office article submitted where health issues Nov 2017 suggested/stated the same health issues in this matter couldn't be ruled as an overdose with these underlining definicies [sic] involuntary manslaughter doesn't fit as charged but think lesser charged offense should've been required as neglent [sic] but not murder.

(Petition, ECF No. 1, PageID 6, 9.)

In his Supplemental Memorandum in support of the Petition, he recites four Propositions of Law on which he believes he deserves relief. The first seems to claim that he is entitled to the same treatment as Thomas Kosto who was similarly charged, but part of whose conviction was vacated on lack of proof the drugs Kosto sold to the victim, Chad Baker, caused Baker's death (ECF No. 4, PageID 41). The second proposition asserts the police violated his *Miranda* rights. *Id.* at PageID 42. The third asserts seizure of evidence in violation of the Fourth Amendment. *Id.* The fourth is a vague assertion about the chain of custody of the drugs seized. *Id.* at PageID 43.

In his Reply to the Return of Writ, Gentry further explains his chain of custody argument:

the deceased victim was found by his sisters who gave the heroin found on his person to a brother-in-law who took it so several different police departments, which broke the chain of custody (ECF No. 10, PageID 203). In connection with this chain of custody argument, he claims he received ineffective assistance of trial counsel and there was insufficient evidence to support a conviction beyond a reasonable doubt. *Id.* at PageID 204.

In support of his second proposition of law, Petitioner again cites the *Kosto* case and argues that Petitioner was not solely liable for the victim's death and Kosto received a light sentence. *Id.*

# Analysis

As indicated above, Gentry pleaded guilty to some of the charges against him in return for dismissal of the remaining charges. On direct appeal he claimed that his guilty plea was not made knowingly, intelligently, and voluntarily. The First District found the plea was proper, holding as follows:

> In his first assignment of error, Gentry claims that his guilty pleas were not made knowingly, intelligently, and voluntarily for a variety of reasons. Under Crim.R. 11(C), before accepting a guilty plea, the trial court must address the defendant personally and, as relevant to this appeal, make sure the defendant understands the consequences of his guilty pleas and the maximum penalties involved. See Crim.R. 11(C)(2)(a). A review of the record demonstrates that Gentry understood the consequences of his guilty pleas. The court engaged in an extensive Crim.R. 11 colloquy with Gentry, during which he acknowledged that he understood the facts and charges against him, the maximum penalties for the offenses, that his sentences could be made consecutive, that involuntary manslaughter was not a community control sanction eligible offense, that the sentence would include a mandatory minimum term, and the rights he was forfeiting by pleading guilty, including the rights to a jury trial, to confront witnesses, and to subpoena witnesses. He stated that he had reviewed the plea form with his attorney, he had signed

> it, the facts read by the prosecutor were true and accurate, he had no remaining questions for his attorney, and he had received no threats or promises in exchange for pleading guilty.
>
> Gentry first argues that his pleas were involuntary because the court failed to notify him that by pleading guilty he would waive his right to appeal the denial of his motion to suppress. However, the court is not required to provide that specific notification. *State v. Chichester*, 1st Dist. Hamilton No. C-050381, 2006-Ohio-4030, ¶ 11; see Crim.R. 11(C)(2)(c). Next, he contends that the evidence contains inconsistencies, and asserts that he did not cause the victim's death and counsel should have obtained an expert witness to testify on his behalf at trial. However, because a guilty plea is a complete admission of guilt, a defendant who voluntarily enters a guilty plea while represented by competent counsel waives the right to appeal all nonjurisdictional issues arising at prior stages of the proceedings. *State v. Calloway*, 1st Dist. Hamilton No. C-040066, 2004-Ohio-5613, '¶ 21; *see Ross v. Court*, 30 Ohio St.2d 323, 323-324, 285 N.E.2d 25 (1972). Further, much of what Gentry challenges is based on information outside of the record, which we cannot consider. See *State v. Ishmail*, 54 Ohio St.2d 402, 405-406, 377 N.E.2d 500 (1978), paragraph one of the syllabus.
>
> Upon review of the record before us, we determine it contains ample evidence that Gentry's pleas were voluntarily, knowingly, and intelligently made. Thus, we overrule his first assignment of error.

(*State v. Gentry*, State Court Record, ECF No. 7, PageID 121-22.)

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

A plea of guilty or no contest is valid if, but only if, it is entered voluntarily and

intelligently, as determined by the totality of the circumstances. *Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *Abdus-Samad v. Bell*, 420 F.3d 614, 631 (6th Cir. 2005); *King v. Dutton*, 17 F.3d 151 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991); *Berry v. Mintzes,* 726 F.2d 1142, 1146 (6th Cir. 1984). The determination of whether this plea was intelligently made depends upon the particular facts and circumstances of each case. *Johnson v. Zerbst,* 304 U.S. 458, 463 (1938); *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The voluntariness of a guilty or no contest plea is determined in light of all relevant circumstances surrounding the plea. *Brady*, 397 U.S. at 749. If a prosecutor's promise is illusory, then a plea is involuntary and unknowing. *United States v. Randolph*, 230 F.3d 243, 250–51 (6th Cir. 2000). However, where a defendant is "fully aware of the likely consequences" of a plea, it is not unfair to expect him to live with those consequences. *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). A plea-proceeding transcript which suggests that a guilty or no contest plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea. *Garcia v. Johnson*, 991 F.2d 324, 326–28 (6th Cir. 1993). Where the transcript shows that the guilty or no contest plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* at 326–27.

By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime. *United States v. Broce*, 488 U.S. 563, 570 (1989); *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

A valid, unconditional guilty or no contest plea waives all "constitutional violations occurring prior to a plea of guilty once the defendant enters his plea," including a challenge to the evidence supporting a conviction and any pre-plea constitutional violations, unless expressly preserved in a plea agreement or at a plea hearing. *United States v. Lalonde*, 509 F.3d 750, 757

6

(6th Cir. 2007); *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

A guilty or no contest plea renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt. *Menna v. New York,* 423 U.S. 61 (1975). "[A] voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'" *United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012), citing *United States v. Martin*, 526 F.3d 926, 932 (2008), citing *United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991). After entry of an unconditional guilty plea, the defendant may challenge only the court's jurisdiction and the voluntary and intelligent nature of the plea itself. *United States v. Ferguson*, 669 F.3d 756, 763 (6th Cir. 2012), citing *United States v, Kirksey*, 118 F.3d 1113, 1115 (6th Cir. 1997). "A guilty plea constitutes a break in the chain of events" leading up to it. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Federal habeas corpus review of claims raised by a petitioner who has entered a guilty plea is limited to "the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Tollett*, 411 U.S. at 266. A guilty plea bars a defendant from raising in federal habeas corpus such claims as the defendant's right to trial and the right to test the state's case against him. *McMann v. Richardson*, 397 U.S. 759, 774 (1970); *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

The factual findings of a state court that a plea was proper generally are generally presumed to be correct. *Dunn v. Simmons*, 877 F.2d 1275 (6th Cir. 1989), overruled on other grounds by *Parke v. Raley,* 506 U.S. 20 (1992). Whether a guilty or no contest plea is or is not voluntary is a mixed question of fact and law, but state court historical factual findings underlying the determination are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Parke v. Raley*, 506 U.S. 20 (1992).

Upon review of the record here, the Magistrate Judge concludes that the First District's

finding that Gentry's guilty plea was knowing, intelligent, and voluntary is neither an objectively unreasonable application of the relevant Supreme Court precedent nor an unreasonable determination of the facts on the basis of the evidence presented.

Several consequences flow from the conclusion that Gentry's guilty plea was knowing, intelligent, and voluntary.

First of all, Gentry's claims of *Miranda* violations become irrelevant. Police violations of *Miranda v. Arizona*, 384 U.S. 436 (1966), prevent the admission in evidence of any statements taken as a result. But here there was no evidence admitted because Gentry waived his right to a trial. No evidence was necessary to convict him because he admitted he was guilty, pursuant to a counseled knowing, intelligent, and voluntary guilty plea.

Second, any difficulties with the chain of custody are irrelevant for the same reason. If Gentry had insisted on a trial, the State would have had to prove a proper chain of custody.[1] But Gentry waived his right to a trial.

Third, any possible Fourth Amendment violations in seizing evidence also are irrelevant for the same reason. Just as the Fifth Amendment operates to exclude statements taken in violation of *Miranda*, the Constitution forbids admission of evidence seized in violation of the Fourth Amendment. *Mapp v. Ohio*, 367 U.S. 643 (1961). But a valid guilty plea such as Gentry entered waives any antecedent Fourth Amendment violations.

The other arguments Gentry makes relate to his comparing his case with that of Thomas Kosto. Gentry appears to be arguing that the evidence that he caused the victim's death does not measure up to the standard set in the *Kosto* case and in any event he was punished more harshly than Kosto. These might be understood as an argument that there was insufficient evidence to

---

[1] Chain of custody is a requirement of state evidence law, not the United States Constitution.

convict and that the amount of punishment violates the Equal protection Clause or the Cruel and Unusual Punishment Clause.

Thomas Kosto was charged with involuntary manslaughter of Chad Baker, corrupting him with drugs, tampering with evidence, and possession of heroin. *State v. Kosto,* 2018-Ohio-1925 (5th Dist. May 14, 2018), appellate jurisdiction declined, 153 Ohio St.3d 1469 (2018). Kosto was convicted on all four counts and appealed, arguing in part that the jury should have been instructed in accordance with *Burrage v. United States*, 571 U.S. 204 (2014). In *Burrage* the Supreme Court was interpreting a penalty enhancement statute, 21 U.S.C. § 841(b)(1)(C), which provides a mandatory minimum twenty-year sentence where death "results from" unlawful distribution of a controlled substance. The Court interpreted "results from" as requiring what is known in the law as "but for" causation. That is the government must prove that the death would not have occurred but for the use of the illegally distributed drug.

In *Kosto*, the Ohio Fifth District Court of Appeals was interpreting Ohio Revised Code § 2903.04(A), which provides: "No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony." In Kosto's case, the predicate felony was corrupting another with drugs. Recognizing that it was interpreting a different statute from the one at issue in *Burrage*, the Fifth District nevertheless found the rationale of *Burrage* applicable. When it applied that rationale, it concluded that the evidence did not support a finding that the heroin Kosto sold Baker was the "but for" cause of Baker's death. Instead, the medical examiner noted the presence of cocaine in Baker's body, which Kosto had not supplied, and testified, "[t]here's no way to tell for sure if he would have died of only heroin." *Kosto* at ¶ 21-22, citing Trial Transcript at 261.

From the way he argues this point, Gentry may believe that the State must prove that the

9

sold drugs are the **sole** cause of death. But that is not what *Burrage* and *Kosto* mean. Instead, they hold the government must prove that the victim would not have died without adding the sold drug into whatever the victim's medical condition already was. That is, the victim would have survived "but for" the injection of the heroin, fentanyl, whatever illicit drug. Thus, showing there were other contributing causes – other drugs, a bad heart, etc. – does not exonerate the drug dealer whose buyer dies.

As Respondent points out, however, all of this reference to *Burrage* and *Kosto* is irrelevant because Gentry admitted, by pleading guilty, that he caused the death of his buyer. If the case had proceeded to trial and assuming the First District would have followed *Kosto*, then the State would have had to prove the drugs Gentry sold were the but for cause of his buyer's death. But by pleading guilty knowingly, intelligently, and voluntarily, Gentry waive his right to force the State to prove that fact.

Finally, Gentry complains that his sentence is somehow disproportionate to the sentences received by others for the same offense. Of course, Kosto received no sentence for manslaughter because the Fifth District vacated that conviction.

The Eighth Amendment's Cruel and Unusual Punishment Clause includes a requirement that punishment be proportional to the crime.

> The Eighth Amendment proportionality principle also applies to noncapital sentences. In *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), we acknowledged the existence of the proportionality rule for both capital and noncapital cases, *id.*, at 271-274, and n. 11, but we refused to strike down a sentence of life imprisonment, with possibility of parole, for recidivism based on three underlying felonies. In *Hutto v. Davis*, 454 U.S. 370, 374, 102 S.Ct. 703, 70 L.Ed.2d 556, and n. 3 (1982), we recognized the possibility of proportionality review but held it inapplicable to a 40-year prison sentence for possession with intent to distribute nine ounces of marijuana. Our most recent decision discussing the subject is *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d

> 637 (1983). There we held that a sentence of life imprisonment without possibility of parole violated the Eighth Amendment because it was "grossly disproportionate" to the crime of recidivism based on seven underlying nonviolent felonies. The dissent in *Solem* disagreed with the Court's application of the proportionality principle but observed that in extreme cases it could apply to invalidate a punishment for a term of years. *Id.*, at 280, n. 3. See also *Hutto v. Finney*, 437 U.S. 678, 685, 98 S.Ct. 2565, 2570, 57 L.Ed.2d 522 (1978) (dicta); *Ingraham v. Wright*, 430 U.S. 651, 667, 97 S.Ct. 1401, 1410, 51 L.Ed. 2d 711 (1977) (dicta).

*Harmelin v. Michigan,* 501 U.S. 957, 997-998 (1991)(some parallel citations omitted). The Sixth Circuit "adheres to the 'narrow proportionality principle' for evaluating Eighth Amendment claims articulated in *Harmelin*." *United States v. Young,* 847 F.3d 328 (6th Cir. 2017), quoting *United States v. Graham*, 622 F.3d 445, 452 (6th Cir. 2010); *United States v. Hill*, 30 F.3d 48, 50-51 (6th Cir. 1994). "One governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).

Applying that principle to Gentry's case, the Court cannot say his punishment is disproportional to the offense he committed. He received ten years imprisonment for taking the life of another human being who would not have died but for injecting the heroin Gentry sold him. The exact same conduct if charged in federal court and judged under the *Burrage* standard would have resulted in a mandatory minimum sentence of twenty years imprisonment, or double what was imposed on Gentry. His Eighth Amendment claim is therefore without merit.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with

11

this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

June 5, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).